IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EZEQUIEL OLIVAREZ, JR.                                        PLAINTIFF

V.                                NO. 11-5057

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Ezequiel Olivarez, Jr., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on August 15, 2008, alleging an inability to work since April 1, 2008, due to "Shoulders, back problems, pain, no upper body strength." (Tr. 149, 153). An administrative hearing was held on February 11, 2010, at which Plaintiff appeared with counsel, and he and his mother testified. (Tr. 23-59).

By written decision dated July 29, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease of the cervical and lumbar spine, obesity, mood disorder not otherwise

specified (NOS), intermittent explosive disorder, and mild mental retardation. (Tr. 11). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling and is precluded from performing overhead work. In addition, the claimant is able to perform only simple tasks with routine supervision and can have superficial contact with co-workers and supervisors but can have no contact with the general public.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a bottling line attendant; conveyor line bakery worker, power screwdriver operator; compression molding machine tender; riveting machine operator; bindery worker; poultry eviscerator; poultry deboner; and poultry dresser. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 27, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

  It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

  The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing

past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

One of the issues that causes the Court concern relates to the hypothetical question posed by the ALJ to the VE, and whether it fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.

There are several instances in the record where Plaintiff stated that although he went through the eighth grade of school, he was unable to read or write. In the initial Disability Report - Field Office, dated September 3, 2008, the field officer reported that Plaintiff had difficulty with reading, using hands, and writing. (Tr. 150). In fact, his girlfriend assisted in answering the questions for him. (Tr. 151). In a September 8, 2008 Function Report - Adult, Plaintiff reported that he was not good at math and read very little. (Tr. 164). At the hearing before the ALJ on February 11, 2010, Plaintiff testified that he still had problems reading and writing and stated "I don't read." (Tr. 32). He stated that he had his wife do that, and that some of the grocery store labels he could identify, but most of the time his wife "does all the reading and writing for me." (Tr. 32). He further testified that he "cannot write a letter" and that he usually took his wife to fill out a job application. (Tr. 33). He also stated that he could not use a telephone book, and just drove from memory. (Tr. 33).

During the Mental Diagnostic Evaluation and Intellectual Assessment performed by

Stephen P. Nichols, Ph.D. on April 1, 2010, Dr. Nichols reported that when he asked Plaintiff to describe his current concerns he replied, "My shoulders and back hurt all the time. I can't read or write." (Tr. 251). Dr. Nichols diagnosed Plaintiff as follows:

   Axis I:   Intermittent Explosive Disorder
   Axis II:   Mild Mental Retardation
   Axis III:  History of shoulder and back pain
   Axis IV:  Functional illiteracy
   Axis V:   GAF - 35 (current).

(Tr. 253). Dr. Nichols also reported that Plaintiff would have difficulty driving unfamiliar routes, shopping independently, handling personal finances, and performing several acts of daily living, and that his capacity to communicate and interact in a socially adequate manner was impaired by his temper and suspicions of other people's motives. (Tr. 253). Dr. Nichols further opined that Plaintiff's capacity to cope with, concentrate, and sustain persistence in completing tasks would be "very poor unless the task were extremely simple and required no reading or writing. Therefore, his capacity to complete work tasks within an acceptable time frame would also be limited." (Tr. 253). Dr. Nichols believed that if Plaintiff were to receive funds, it would be best if his wife managed them on his behalf. (Tr. 253).

  It is also noteworthy that Dr. Nichols completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), on April 5, 2010. (Tr. 254-256). Dr. Nichols found Plaintiff had marked restrictions in understanding and remembering complex instructions; carrying out complex instructions; and the ability to make judgments on complex work-related decisions. (Tr. 254). Dr. Nichols also noted that Plaintiff had a low IQ (1st percentile), and a marked restriction in interacting appropriately with his supervisor and moderate and marked restriction in interacting appropriately with co-workers, based upon Plaintiff's diagnosis of

intermittent explosive disorder. (Tr. 255).

There is no evidence to contradict Dr. Nichols' finding that Plaintiff is functionally illiterate. In fact, the ALJ stated in his decision that Plaintiff was unable to follow written instructions "because he cannot read and understand but he is able to follow spoken instructions fairly well." (Tr. 13). The ALJ also discussed the fact that Dr. Nichols diagnosed Plaintiff with functional illiteracy, but that Plaintiff "should also be able to perform work involving simple tasks with routine supervision, only superficial contact with co-workers and supervisors, and no contact with the general public." (Tr. 16-17). The ALJ concluded that Dr. Nichols' assessment of mental limitations was supportive of unskillled work involving only simple tasks and little interaction with others, as set out in his RFC assessment. (Tr. 17).

In his hypothetical to the VE, the ALJ asked him to consider:

> a hypothetical individual same age, education and past work as the Claimant. Assume the individual is limited to light level work as defined by the Social Security regulations, further limited to only occasional climbing, balancing, stooping, kneeling, crouching, crawling, assume the individual's limited to no overhead work and from a nonexertional standpoint the individual's limited to simple tasks with routine supervision, superficial contact with co-workers, supervisors, no contact with the general public, and just from an exertional standpoint such an individual could not perform any of the claimant's past work.

(Tr. 53).

The Court recognizes that in Hillier v. Social Security Administration, 486 F.3d 359, 365-366 (8th Cir. 2007), the court found the hypothetical question to be sufficient even though it did not expressly state Plaintiff was functionally illiterate and had poor reading and writing skills. However, in Hillier, the ALJ did state in his hypothetical question that "[t]he file indicates [Hillier] has an IQ score in the 70's, ... I find her IQ to be low average to borderline." The ALJ

in Hillier also stated that the claimant could understand, remember, and follow concrete instructions and limited her to simple, concrete work, either unskilled or semiskilled. Id. In the present case, in his hypothetical question to the VE, the ALJ did not make any specific reference to the fact that Plaintiff was functionally illiterate or that his IQ was limited. Each of the jobs the ALJ determined Plaintiff could perform (bottling line attendant, conveyor line bakery worker, power screwdriver operator, compression molding machine tender, riveting machine operator, bindery worker, poultry eviscerator, poultry debone, and poultry dresser) require the ability to recognize the meaning of 2,500 (two -or three-syllable) words, and to read at the rate of 95-120 words per minute. They also require the ability to print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. They require the individual to add and subtract two-digit numbers, multiply and divide 10's and 100's by 2, 3, 4, and 5, to perform the four basic arithmetic operations with coins as part of a dollar, and to perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound. Dictionary of Occupational Titles §§ 920.687-042, 524.687-022, 699.685-026, 556.685-022, 699.685-030, 653.686-026, 525.687-074, 525.687-062, 525.687-070.

      Based upon the foregoing, the Court believes this matter should be remanded in order for the ALJ to present a properly phrased hypothetical question to the VE, which should encompass all of the Plaintiff's impairments, including the practical consequences of Plaintiff's functional illiteracy. The Court also notes that during the time period that Plaintiff was seen by mental health experts, he received no higher than a GAF score of 40, with the most recent being 35. The undersigned recommends that the ALJ again consider these scores, in conjunction with Plaintiff's functional illiteracy.

### IV. Conclusion:

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ORDERED this 14th day of June, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)